# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

March 20, 2025

LAURA A. AUSTIN, CLERK
BY: **/s/ Amy Fansler**
DEPUTY CLERK

|  |  |  |
|---|---|---|
| **BRANDON C. CSADY,** | ) | |
| | ) | |
| **Petitioner,** | ) | **Case No. 5:23-cv-042** |
| | ) | |
| **v.** | ) | **By:   Michael F. Urbanski** |
| | ) | **Senior United States District Judge** |
| **GARY A. ASHWORTH, Acting** | ) | |
| **Secretary of the Air Force et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## <u>MEMORANDUM OPINION</u>

Petitioner Brandon C. Csady comes before this court seeking relief from his court-martial convictions for maltreatment and indecent exposure. Compl., ECF No. 1; Pet., ECF No. 2. Csady was sentenced to a reprimand, reduction in his grade, forfeiture of pay, and hard labor without confinement for two months. Pet., ECF No. 2 at 1. Respondents, Gary A. Ashworth, Acting Secretary of the Air Force, Patricia J. Zarodkiewicz, Administrative Assistant to the Secretary of the Air Force, Pete Hegseth, Secretary of Defense, and the United States of America have moved to dismiss or, in the alternative, for summary judgment.[1] ECF No. 37. Respondents principally contend that this court should not lightly unsettle the judgments of the military justice system, and they argue that Csady has not raised any

---

[1] When this case was filed in 2023, different respondents were named because, at that time, the Secretary of the Air Force was Frank Kendall, III, the Administrative Assistant to the Secretary of the Air Force was Anthony P. Reardon, and the Secretary of Defense was Lloyd J. Austin, III. Pet., ECF No. 2. However, due to retirements and a change in presidential administration, different individuals now hold these offices. Federal Rule of Civil Procedure 25(d) provides that "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,] . . . [t]he officer's successor is automatically substituted as a party [and] [l]ater proceedings should be in the substituted party's name . . . . The court may order substitution at any time, but the absence of such an order does not affect the substitution." Fed. R. Civ. P. 25(d).

jurisdictional or otherwise fundamental defects that could justify this court's intervention in a noncustodial case. Mem. Supp. Mot. Dismiss, ECF No. 38. The court agrees that Csady's claims amount to mere disagreements with the judgments of the military justice system, not the kind of fundamental defects in the military justice system's exercise of power over Csady that would permit collateral review. Accordingly, the motion to dismiss is **GRANTED**.

## BACKGROUND

Csady's petition raises three claims. Compl., ECF No. 1; Pet., ECF No. 2.[2] Count One alleges that Csady's maltreatment conviction is void for vagueness because Csady did not have fair notice of the conduct charged. Pet., ECF No. 2, ¶¶ 82-99. Count Two alleges that the evidence was legally and factually insufficient to support his maltreatment and indecent exposure convictions. Id. ¶¶ 100-08. And Count Three alleges that the military judge abused his discretion in failing to admit certain evidence Csady characterizes as constitutionally required. Id. ¶¶ 109-16. The facts underlying each of these claims are recited below in roughly chronological order, beginning with the events leading to Csady's court-martial. The procedural history of Csady's attempts to challenge his convictions within the military justice system is also set forth and is of particular importance in determining whether collateral review is available.

### Factual Background

Csady served as a Security Forces Officer at Altus Air Force Base, a position which required him to train and mentor junior airmen. Id. ¶ 32. Csady was assigned to supervise R.B., and Csady and R.B. conducted two patrols together in June 2017. Id. ¶¶ 34, 37. During the

---

[2] The petition and complaint are identical. For consistency, the opinion will cite the petition throughout.

second of these patrols, R.B. testified that Csady told her that "he wrote her enlisted performance reports ("EPRs") and that she needed to listen to him." Id. ¶¶ 45-50. R.B. testified that Csady forced her to have oral sex with him against her will. Id. ¶ 48.

On the basis of these events, the government charged Csady with maltreatment of R.B., "a person subject to his orders, by sexually harassing her." Id. ¶ 59. The government also charged Csady with indecent exposure and sexual assault. Id. ¶¶ 6, 63. A general court-martial was convened. In the military justice system, a military judge presides over a court-martial, and a panel determines whether the defendant is guilty. Id. ¶ 6 n.2. The panel is like a jury, except that it is composed of all active-duty service members, either officers or enlisted members, depending on the rank of the defendant. Id.; Rule for Courts-Martial ("RCM") 502(a)(1).

As to Csady's maltreatment charge, the military judge advised the panel:

> "Sexual harassment" includes influencing, offering to influence, or threatening the career, pay, or of another person in exchange for sexual favors. Sexual harassment also includes deliberate or repeated offensive comments or gestures of a sexual nature. Sexual harassment alone does not constitute the offense of maltreatment. For sexual harassment to also constitute the offense of maltreatment, the government must prove that the accused's conduct meets the elements and definitions for the offense of maltreatment, as I have defined those terms to you.

Pet., ECF No. 2, ¶ 60. The military judge further instructed that to prove maltreatment, the government was required to prove:

> (1) [Csady] knew that RB was subject to his orders; (2) [Csady] knew that he engaged in the alleged conduct in respect to her; and (3) when viewed objectively under all the circumstances, those actions were abusive or otherwise unwarranted, unjustified, and unnecessary for any lawful purpose and caused, or reasonably could have caused, physical or mental harm or suffering.

Id. ¶ 61 (citations omitted); see Art. 93, Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 893 ("Any person subject to this chapter who is guilty of cruelty toward, or oppression or maltreatment of, any person subject to his orders shall be punished as a court-martial may direct.").

As for indecent exposure, the military judge provided the following definitions to the panel:

> "Indecent manner" means conduct that amounts to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations. "Intentional" means willful on purpose. An act done as the result of a mistake or accident is not done "intentionally."

Pet., ECF No. 2, ¶ 64; see Art. 120c, UCMJ, 10 U.S.C. § 920c(c) ("Any person subject to this chapter who intentionally exposes, in an indecent manner, the genitalia, anus, buttocks, or female areola or nipple is guilty of indecent exposure and shall b[e] punished as a court-martial may direct.").

In delineating these charges and the sexual assault charge, the military judge also advised the panel on the availability of a mistake of fact defense. Id. ¶ 65. Specifically, the military judge explained that a mistake as to the existence of consent would serve as a defense. Id.

On September 20, 2019, the panel convicted Csady of maltreatment and indecent exposure, but acquitted Csady of sexual assault. Id. ¶ 6. Csady was sentenced to a reprimand, reduction to the grade of E-3, forfeiture of $350 pay per month for two months, restriction to the limits of the base for two months, and hard labor without confinement for two months. Id. ¶ 8. Csady's DNA sample was also sent to the Secretary of Defense. Id. ¶ 12. The events

summarized thus far form the basis for Count Two of Csady's petition, which claims, "The evidence is legally and factually insufficient to support the convictions for maltreatment and indecent exposure, in violation of petitioner's Fifth Amendment right to due process." Id. ¶¶ 100-08.

The events pertinent to Count Three, which alleges that the "military judge abused his discretion in denying [Csady's] motion to admit constitutionally required evidence under Military Rule of Evidence 412," are more narrowly focused. Id. ¶¶ 109-16. They concern a pretrial evidentiary hearing and ruling on Csady's motion to admit evidence under Military Rule of Evidence ("MRE") 412(b)(3).[3] While MRE 412(a)(1)-(2) prohibits admitting evidence in a proceeding involving an alleged sexual offense "to prove that a victim engaged in other sexual behavior" or "to prove a victim's sexual predisposition," under MRE 412(b)(3), "evidence the exclusion of which would violate the accused's constitutional rights" is admissible. In his motion, Csady sought to introduce nine pieces of evidence tending to show consent or Csady's mistake of fact as to consent. Suppl. Pet., ECF No. 33, ¶¶ 9, 32-42. The military judge admitted eight pieces of evidence and excluded one on the grounds that it was impermissible as "straight up propensity" evidence under MRE 412. Id. ¶¶ 33, 42-42.

---

[3] The Military Rules of Evidence ("MRE") were adopted in 1980 in response to the Federal Rules of Evidence ("FRE"), thus replacing a common law of evidentiary rules at courts-martial which had been developed by the Court of Military Appeals. Fred L. Borch, The Military Rules of Evidence: A Short History of Their Origin and Adoption at Courts-Martial, Army Lawyer, at *9 (2014). "[S]ome FRE were adopted without change, while others were modified to fit better with military practice." Id. at *11. The military rule concerning evidence of a victim's sexual behavior in a case involving alleged sexual misconduct is largely similar to the corresponding federal rule; both prohibit evidence of the victim's other sexual behavior or sexual predisposition with limited exceptions. Compare MRE 412(b)(3) ("In a proceeding, the following evidence is admissible, if otherwise admissible under these rules: . . . evidence the exclusion of which would violate the accused's constitutional rights.") with FRE 412(b)(1)(C) ("The court may admit the following evidence in a criminal case: . . . evidence whose exclusion would violate the defendant's constitutional rights.").

Finally, Count One centers on confusion that came to light after the panel's findings were announced during a session held outside the presence of the panel to consider several pre-sentencing matters, including R.B.'s victim impact statement. Pet., ECF No. 2, ¶ 66. Largely on the basis of exchanges between the military judge and counsel during that session, Csady alleges in Count One that his conviction for maltreatment is "void for vagueness because [Csady] was not given fair notice of what conduct the government charged as sexual harassment, in violation of [Csady's] Fifth Amendment Right to due process." Id. ¶¶ 82-99.

During the session, Csady's defense counsel objected to proposed language in R.B.'s victim impact statement stating that R.B. "was forced to do unimaginable things." Id. Csady's counsel also objected to R.B.'s claim in the victim impact statement that "at least I know that you all believe me." Id. Csady's counsel argued, "the Government [cannot] now claim that even though [Csady] was acquitted of threatening [R.B.] into oral sex, now we're going to say that the threat was also the maltreatment?" Id. ¶ 70; see Art. 120, UCMJ, 10 U.S.C. § 920(b) (defining sexual assault). In other words, Csady's counsel argued that because Csady had been acquitted of sexual assault, he had been acquitted of the underlying alleged conduct, which, he argued, meant that Csady had been acquitted of using the threat of a bad performance review to coerce R.B. into oral sex. Pet., ECF No. 2, ¶ 94. In arguing that the alleged performance review threat and nonconsensual oral sex could not be considered at sentencing for the maltreatment conviction, Csady's counsel thus called into question which precise conduct the panel had considered in convicting Csady of maltreatment.

Csady alleges that "neither the Government nor the military judge could clarify which of [Csady's] statements or conducts, or both constituted [the] sexual harassment [component

of maltreatment].” Id. For example, while the military prosecutor stated that the conversation about the performance review was an “essential part of the finding” of maltreatment, id. ¶ 68, at one point, the military judge stated, “the elements for maltreatment would be satisfied separate and apart from any threats about the EPR [performance review],” id. ¶ 69, and at another point, the military judge characterized the performance review-related threat as part of the acquitted sexual assault charge, id. ¶ 70. For the purposes of ruling on R.B.’s victim impact statement, the military judge ultimately concluded that the “‘forced to do unimaginable things’ and ‘at least now I know that you all believe me’” language should be excluded because these comments concerned the alleged nonconsensual oral sex, which was the basis for the sexual assault charge of which Csady was acquitted. Id. ¶ 70. However, Csady alleges that this conversation never clarified which of Csady’s actions were deemed by the government, the military judge, or the panel to constitute the sexual harassment element of his maltreatment conviction. Csady claims that this confusion renders that conviction void for vagueness.

## Procedural History

Before filing his complaint and petition in federal court, Csady appealed his court-martial conviction three times within the military justice system. Because Csady’s sentence was sufficiently minor that his case was ineligible for automatic review by the Air Force Court of Criminal Appeals under Article 66, UCMJ, 10 U.S.C. § 866(b), Csady first sought the review of The Judge Advocate General under Article 69, UCMJ, 10 U.S.C. § 869(a)-(c). Id. ¶ 17. In this first appeal, Csady argued that (1) the evidence was legally and factually insufficient to support his convictions; (2) the military judge erred in not excusing the panel president, who was a personal friend of the accuser; and (3) the military judge erred in

excluding evidence under MRE 412. Id. At the time, Csady did not raise the claim, which is now the subject of Count One, that his maltreatment conviction was void for vagueness. The Judge Advocate General denied relief on August 18, 2020, id. ¶ 18, issuing an opinion that devoted one to two pages of analysis to each of Csady's challenges, Mem. Supp. Mot. Dismiss Ex. 1, Opinion of The Judge Advocate General, ECF No. 38 at 2-7. The Judge Advocate General ultimately concluded that Csady had not established error prejudicial to his substantial rights. Id.

Next, Csady filed an Application for Grant of Review with the Air Force Court of Criminal Appeals under Article 69, UCMJ, 10 U.S.C. § 869(d). Pet., ECF No. 2, ¶ 19. Csady contended that (1) his maltreatment conviction was void for vagueness because Csady was not given fair notice of what conduct the government charged as sexually harassing the alleged victim; (2) the evidence was legally insufficient to support the convictions for maltreatment and indecent exposure; (3) the military judge abused his discretion in denying a challenge for cause against the panel president because the panel president was close personal friends with the accuser; and (4) the military judge abused his discretion in denying the defense motion to admit constitutionally required evidence under MRE 412. Id. ¶ 20. Csady submitted a 37-page brief arguing each of these points. Mem. Supp. Mot. Dismiss Ex. 8, ECF No. 38. On September 30, 2021, the Air Force Court of Criminal Appeals denied the Application for Grant of Review. Pet., ECF No. 2, ¶ 25. The Air Force Court of Criminal Appeals issued a brief opinion, which stated:

> We have reviewed the action taken by The Judge Advocate General in this case and the Application for Grant of Review timely submitted to this court under Article 69(d)(1)(B), UCMJ, 10 U.S.C. § 869(d)(1)(B), dated 9 October 2020. The court

> determines the application has not demonstrated a substantial
> basis for concluding that the action under review constituted
> prejudicial error. Article 69(d)(2)(A), UCMJ, 10 U.S.C. §
> 869(d)(2)(A).

Pet. App. V, ECF No. 2-5.

Lastly, Csady filed a Petition for Grant of Review with the United States Court of Appeals for the Armed Forces. Pet., ECF No. 2, ¶ 26. Csady made three arguments: (1) the maltreatment conviction was void for vagueness because Csady was not given fair notice of what conduct the government charged as sexual harassment; (2) the evidence was legally insufficient to support the findings of guilty for maltreatment and indecent exposure; and (3) the military judge abused his discretion in denying the defense motion to admit constitutionally required evidence under MRE 412. Id. ¶ 28. On January 5, 2022, the Court of Appeals for the Armed Forces issued an opinion that simply stated, "Appellee's motion to dismiss the petition for grant of review is granted, and the petition for grant of review is dismissed for lack of jurisdiction." Id. ¶ 30; Pet. App. IX, ECF No. 2-9.

On July 11, 2023, Csady filed his complaint and petition in federal court, seeking (1) a reversal of his general court-martial conviction; (2) an order requiring respondents to show cause within five days as to why such conviction, and accompanying sentence, should not be permanently vacated; (3) an order requiring the secretary of the air force to restore Csady's pay, rank, benefits, entitlements, and privileges; (4) an order requiring the administrative assistant to the secretary of the air force to make such changes to Csady's official and unofficial records to carry out this court's orders; (5) an order requiring that Csady's DNA analysis be expunged from the relevant databases and that his DNA sample be destroyed; (6) an award of

Csady's costs and attorney's fees; and (7) a grant of all other relief the court deems proper. Pet., ECF No. 2 at 35.

On June 7, 2024, the respondents filed a motion to dismiss, or in the alternative, for summary judgment. ECF No. 37.

## STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint, or, in this case, complaint and petition, "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166-67 (4th Cir. 2017).

Generally, the court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). However, the court may "consider documents attached to the complaint" in addition to documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Fusaro v. Cogan, 930 F.3d 241, 248 (4th Cir. 2019) (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)). Courts may also take judicial notice of matters of public record such as court filings. Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006). Specifically, a district court may consider "the record

created by the military courts as well as the factual findings of the court-martial," where those documents are submitted alongside a motion to dismiss. Brown v. Kendall, No. 22-410, 2023 WL 2648781, at *1 (D. Md. Mar. 27, 2023); see also Woods v. Mayorkas, No. 21-519, 2021 WL 3681165, at *3 (D. Md. Aug. 19, 2021) (considering "filings from the related pending court-martial proceedings" on a motion to dismiss a habeas petition).

Csady's allegations and the military court documents submitted by both parties, including Csady's briefing before the military courts and those courts' opinions and judgments, are sufficient to decide this case. Accordingly, there is no need to treat respondents' motion as a motion for summary judgment.

## DISCUSSION

This case turns on the deference owed by federal district courts to the military justice system. Thus, before analyzing Csady's claims, this opinion will explain the comprehensive and independent nature of the military justice system and the highly circumscribed availability of federal court review of the judgments of the military justice system. Although carefully delineated exceptions have evolved over time, the "general rule" is that "the acts of a court martial, within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts." Smith v. Whitney, 116 U.S. 167, 177 (1886). Because no exception applies in this case, the motion to dismiss must be **GRANTED**.

### The Military Justice System

"Congress has long provided for specialized military courts to adjudicate charges against service members." Ortiz v. United States, 585 U.S. 427, 431 (2018). These courts are creatures of Article I, not Article III. Santucci v. Commandant, U.S. Disciplinary Barracks, 66

F.4th 844, 852 (10th Cir. 2023) (citing U.S. Const. art. I, § 8, cl. 14) (explaining that Congress's authority to create military courts emanates from Congress's constitutional power to "make Rules for the Government and Regulation of the land and naval Forces"). "Congress has taken great care both to define the rights of those subject to military law, and provide a complete system of review within the military system to secure those rights." Burns v. Wilson, 346 U.S. 137, 140 (1953) (plurality). To this end, Congress created in the UCMJ "a hierarchy within the military establishment to review the convictions of courts-martial, to ferret out irregularities in the trial, and to enforce the procedural safeguards which Congress determined to guarantee to those in the Nation's armed services." Id. at 141.

"There are three types of courts-martial at the military trial court level: summary, special, and general." Willenbring v. United States, 559 F.3d 225, 227 n.4 (4th Cir. 2009) (citing Weiss v. United States, 510 U.S. 163, 167 (1994)). "A summary court-martial adjudicates minor offenses only, while a special court-martial has jurisdiction over more serious offenses but cannot impose punishment of more than six months' confinement." Id. "In contrast, a general court-martial," which is the kind of court-martial to which Csady was subject, "is entitled to adjudicate all offenses identified under the UCMJ, and may impose any lawful sentence." Id.

Following a court-martial, "[t]he next phase of military justice occurs at one of four appellate courts: the Court of Criminal Appeals for the Army, Navy-Marine Corps, Air Force, or Coast Guard." Ortiz, 585 U.S. at 432. These courts, "using three-judge panels of either officers or civilians, review all decisions in which the sentence imposed involves a punitive discharge, incarceration for more than [a statutorily designated period], or death." Id. (citing Art. 66, UCMJ, 10 U.S.C. §§ 866(a)-(c)).

Congress has not provided for automatic review by the Courts of Criminal Appeals in cases like Csady's involving no punitive discharge or period of confinement. Id. Review may nevertheless be available through The Judge Advocate General, which can exercise its own review and also has discretionary authority to refer a case to the appropriate Court of Criminal Appeals. Art. 69, UCMJ, 10 U.S.C. § 869(a)-(c).[4] In a case where The Judge Advocate General has reviewed a court-martial, as here, to determine whether error prejudicial to the accused's substantial rights occurred, the accused may submit an application for review to the appropriate Court of Criminal Appeals. Art. 69(d), UCMJ, 10 U.S.C. § 869(d). However, a Court of Criminal Appeals may grant such an application for review of The Judge Advocate General's determination "only if" the application submitted by the accused is timely and "demonstrates a substantial basis for concluding that the action on review . . . constituted prejudicial error." Id.

"Atop the court-martial system is the [United States Court of Appeals for the Armed Forces] . . . , a 'court of record' made up of five civilian judges appointed to serve 15-year terms." Ortiz, 585 U.S. at 432 (citing Art. 141, UCMJ, 10 U.S.C. § 941; Art. 142, UCMJ, 10 U.S.C. § 942(a)-(b)). The Court of Appeals for the Armed Forces shall review:

> (1) all cases in which the sentence, as affirmed by a Court of Criminal Appeals, extends to death;
>
> (2) all cases reviewed by a Court of Criminal Appeals which the Judge Advocate General [after following additional procedures] . . . orders sent to the Court of Appeals for the Armed Forces for review; and

---

[4] The Judge Advocate General's review is limited in scope such that The Judge Advocate General "may set aside the findings or sentence, in whole or in part, on the grounds of newly discovered evidence, fraud on the court, lack of jurisdiction over the accused or the offense, error prejudicial to the substantial rights of the accused, or the appropriateness of the sentence." Art. 69, UCMJ, 10 U.S.C. § 869(c).

> (3) all cases <u>reviewed by a Court of Criminal Appeals</u> in which,
> upon petition of the accused and on good cause shown, the
> Court of Appeals for the Armed Forces has granted a review.

Art. 67, UCMJ, 10 U.S.C. § 867 (emphasis added). However, review is not available in a case that was not "reviewed by a Court of Criminal Appeals," for example, where the Court of Criminal Appeals denied an application for review of The Judge Advocate General's determination under Article 69(d), UCMJ, 10 U.S.C. § 869(d). Following a review by the Court of Appeals for the Armed Forces, the Supreme Court may, under 28 U.S.C. § 1259, "review the [Court of Appeals for the Armed Forces'] decisions by writ of certiorari." <u>Ortiz</u>, 585 U.S. at 432.

"Finally, a service member may collaterally attack his or her court-martial conviction in a federal district court, regardless of whether the service member is in custody." <u>Bond v. Kendall</u>, 8:22-cv-01509, 2023 WL 5404069, at *2 (D. Md. Aug. 22, 2023) (quotations omitted); <u>see also</u> <u>Schlesinger v. Councilman</u>, 420 U.S. 738, 745 (1975) (holding that the district court's power to preside over collateral attacks of court-martial convictions is not limited to habeas proceedings). However, collateral review of court-martial judgments is "narrowly circumscribed," particularly in noncustodial cases like this one. <u>Santucci</u>, 66 F.4th at 853.

The limited availability of collateral review of court-martial judgments reflects respect for Congress's design that military courts function as a comprehensive system "largely exempted . . . from direct Article III review." <u>Id.</u> at 853. Indeed, "Congress has never empowered the lower federal courts to directly review the outcomes of court-martial proceedings." <u>Id.</u> The limited availability of collateral review further reflects federal courts'

humility concerning military law, "which is a jurisprudence which exists separate and apart from the law which governs [the] federal judicial establishment." <u>Burns</u>, 346 U.S. at 140.

### Collateral Review by District Courts

The Supreme Court has explained "the general rule" that "the acts of a court martial, within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts." <u>Smith</u>, 116 U.S. at 177. However, in <u>Schlesinger v. Councilman</u>, the Court recognized that "this general rule carries with it its own qualification—that the court-martial's acts be within the scope of its jurisdiction and duty." <u>Schlesinger</u>, 420 U.S. at 746. This narrow, inherent exception to the general prohibition on lower federal court review of court-martial judgments is only available where "because of lack of jurisdiction or some other equally fundamental defect, the judgment neither justifies nor bars relief from its consequences." <u>Id.</u> at 747. Stated differently, "collateral relief from the consequences of court-martial judgments . . . [is] barred unless it appear[s] that the judgments were void," but if indeed a petitioner can show that the judgment against him was void due to a fundamental defect, a federal district court may be able to intervene. <u>Id.</u> at 748. The <u>Schlesinger</u> analysis for determining whether a judgment is void considers "the nature of the alleged defect, and the gravity of the harm from which relief is sought. Moreover, both factors must be assessed in light of the deference that should be accorded the judgments of the carefully designed military justice system established by Congress." <u>Id.</u> at 753.

Beyond such challenges based on jurisdictional or fundamental defects, the Supreme Court has recognized an additional "avenue—albeit a narrow one—through which an Article III court could collaterally review the decision of a military court on the merits." <u>Santucci</u>, 66

F.4th at 854. However, this second exception applies exclusively in the habeas context, meaning that it applies only where the petitioner seeking relief from the military courts' judgment is in custody. In Burns v. Wilson, the Court was confronted with claims of "serious" Fifth Amendment violations implicating the "proper administration of the power of a civil court to review the judgment of a court-martial in a habeas corpus proceeding." Burns, 346 U.S. at 139. Specifically, the case concerned allegations that the habeas petitioners "had been subjected to illegal detention; . . . that the military authorities on Guam had suppressed evidence favorable to them, procured perjured testimony against them . . . [; and] that their trials were conducted in an atmosphere of terror and vengeance, conducive to mob violence instead of fair play." Id. at 138. A plurality of the Court concluded that "when a military decision has dealt fully and fairly with an allegation raised in [a habeas] application, . . . it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." Id. at 142. However, considering the significant due process claims presented, the plurality acknowledged that "[h]ad the military courts manifestly refused to consider those claims, the District Court was empowered to review them de novo." Id. Ultimately, in Burns itself, the "petitioners had been accorded a complete opportunity to establish the authenticity of their allegations, and had failed," and so "it was not the duty of the civil courts simply to repeat that process—to re-examine and reweigh each item of evidence." Id. at 144. Nevertheless, the plurality decision in Burns has subsequently been interpreted to permit habeas review of military court judgments "reach[ing] beyond jurisdictional questions to an assessment of whether a full merits review is (at the very least) authorized because the military justice system has failed to give full and fair consideration to the petitioner's claims." Santucci, 66 F.4th at 855.

The Fourth Circuit has not stated its own standard for evaluating whether the military justice system has failed to give a custodial petitioner's claims full and fair consideration. Accordingly, "district courts in the Fourth Circuit have relied upon the Tenth Circuit's jurisprudence in this arena." Chinchilla v. Whitley, No. 3:20-cv-871, 2021 WL 1792075, at *3 (E.D. Va. May 5, 2021); see also Brown, 2023 WL at *2.[5] In Dodson v. Zelez, the Tenth Circuit articulated four factors that must be satisfied to permit habeas review of a non-jurisdictional challenge to a military conviction:

> 1. The asserted error must be of substantial constitutional dimension . . . . 2. The issue must be one of law rather than of disputed fact already determined by the military tribunals . . . . 3. [No m]ilitary considerations [] warrant different treatment of constitutional claims . . . . 4. The military courts [failed to] give adequate consideration to the issues involved [or failed to] apply proper legal standards.

917 F.2d 1250, 1252-53 (10th Cir. 1990) (citations omitted) (citing Calley v. Callaway, 519 F.2d 184, 199-203 (5th Cir. 1975), cert. denied, 425 U.S. 911 (1976)). Since Dodson itself, the Tenth Circuit has clarified that "petitioners must establish—in substance—that each of the four Dodson factors weighs in their favor to be eligible for full merits review of their claims." Santucci, 66 F.4th at 856.

Because Csady has not been subject to confinement, this court's review is unavailable unless he can demonstrate that the judgment against him is void based on a jurisdictional or

---

[5] Courts "consistently justify adoption of the Tenth Circuit's standard on the basis that the United States Disciplinary Barracks are located at Fort Leavenworth, Kansas, which has enabled the Tenth Circuit to develop expertise and a significant body of case law in this area." Anderson v. Bolster, No. 1:19-cv-75, 2020 WL 5097516, at *4 n.4 (E.D. Va. Aug. 27, 2020), aff'd, No. 20-7707, 2022 WL 4998074 (4th Cir. Oct. 4, 2022).

fundamental defect under <u>Schlesinger</u>. 420 U.S. at 747-48.[6] <u>Burns</u> and the <u>Dodson</u> factors are still pertinent, however, because while determining whether a judgment is void based on a fundamental defect can be a murky inquiry, it is quite clear that if a petitioner cannot even satisfy <u>Burns</u> and the <u>Dodson</u> factors, he cannot make out a case under <u>Schlesinger</u>. The Eighth Circuit has noted that "in light of [<u>Schlesinger</u>'s] point that non-habeas review is if anything more deferential than habeas review of military judgments, a military court's judgment clearly will not suffer such a defect if it satisfies <u>Burns</u>'s 'fair consideration' test." <u>Allen v. U.S. Air Force</u>, 603 F.3d 423, 431 (8th Cir. 2010) (citation omitted). Additionally, "the Fourth Circuit has affirmed at least one district court's application of the Tenth Circuit's full and fair consideration test to a non-habeas collateral attack of a court-martial." <u>Chinchilla</u>, 2021 WL at *3 (citing <u>Yongo v. United States</u>, No. 5:10-cv-220, 2013 WL 2285341, at *6 (E.D.N.C. May 23, 2013), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Yongo v. McHugh</u>, 540 F. App'x 237 (4th Cir. 2013)); <u>see also</u> <u>Williams v. Del Toro</u>, No. 21-2856, 2022 WL 3544261, at *5 (D. Md. Aug. 18, 2022). Accordingly, this opinion will apply both standards in analyzing the availability of collateral review for Csady's claims.

### Availability of Collateral Review for Csady's Claims

It is clear under <u>Schlesinger</u> that Counts Two and Three of Csady's petition cannot be collaterally reviewed by this court because they do not raise fundamental defects that could void the military court's judgment. Count One also does not raise a fundamental defect, but because it is a somewhat closer case, it is helpful to apply the <u>Dodson</u> factors. Doing so reveals

---

[6] Csady agrees that he "was not sentenced to . . . confinement." Opp'n, ECF No. 40 at 3; Pet., ECF No. 2, ¶ 17. He further agrees that his collateral attack is limited to seeking a determination that his court-martial judgment is void under <u>Schlesinger</u>. Opp'n, ECF No. 40 at 6.

that the military justice system gave Csady's claim that his conviction for maltreatment was void for vagueness full and fair consideration. Because Count One cannot even satisfy the <u>Dodson</u> factors, the military court's judgment certainly is not void. Thus, the motion to dismiss is **GRANTED** as to all three claims.

Counts Two and Three do not concern fundamental defects that could render the military court's judgment void. The <u>Schlesinger</u> Court did not precisely define what defects other than jurisdictional defects are so fundamental as to void a judgment, but the court did note that a judgment "is not rendered void merely by error." <u>Id.</u> at 747. Jurisdictional defects are those that call into question the military court's exercise of power over a petitioner's case; for example, in <u>Larrabee v. Del Toro</u>, the District of Columbia Circuit reviewed whether a member of the Fleet Marine Reservists was subject to being court-martialed in the first place. 45 F.4th 81, 88-89 (D.C. Cir. 2022). Defects are not fundamental simply because a petitioner claims a constitutional violation. <u>See</u> <u>Sanford v. United States</u>, 586 F.3d 28, 33, 37 (D.C. Cir. 2009).

Applying <u>Schlesinger</u>'s consideration of "the nature of the alleged defect" to Count Two, it is notable that Count Two's allegations are almost entirely factual disputes. 420 U.S. at 746. Count Two claims the evidence was legally and factually insufficient to support Csady's conviction, in violation of Csady's Fifth Amendment due process rights. Pet., ECF No. 2, ¶¶ 100-08. To this end, Csady alleges that a reasonable fact finder could not have found beyond a reasonable doubt that Csady's conduct caused R.B. physical or mental suffering, that a reasonable fact finder could not have found beyond a reasonable doubt that Csady's conduct was indecent, and that a reasonable fact finder could not have found beyond a reasonable

doubt that Csady did not make a mistake of fact as to R.B.'s consent. Id. ¶ 103. These factual disputes do not call into question whether the military court acted "within the scope of its jurisdiction and duty" by exercising power over Csady's case. Schlesinger, 420 U.S. at 746. Rather, Csady assumes his matter was properly before the military justice system and merely claims that the panel made an "error" in weighing the evidence and deciding his case as it did. Id. at 747. The purely factual nature of the alleged defect in Count Two thus renders collateral review unavailable under Schlesinger.

Considering Count Two, as Schlesinger dictates, "in light of the deference that should be accorded the judgments of the carefully designed military justice system established by Congress" further demonstrates that collateral review would be inappropriate. Id. at 753. Count Two centers on discrepancies between Csady's testimony at trial and R.B.'s testimony at trial. Csady now alleges that "R.B. was an untruthful person who had two motives to fabricate the allegations against [Csady] and her testimony was preposterous." Pet., ECF No. 2, ¶ 103. Whether a witness is to be believed is a classic issue for the fact finder who observed the witness's testimony firsthand—here, the panel who convicted Csady. Id. ¶ 6. Even within the federal courts, appellate courts exercise deference in reviewing trial courts' determinations on issues of fact, in part because trial courts are closer to the evidence and better suited to making credibility determinations. See United States v. Stevenson, 396 F.3d 538, 543-44 (4th Cir. 2005) (noting that appellate courts defer to trial courts on issues of fact not only because of "the trial judge's superior opportunity to assess the credibility of witnesses[,]" but also because this deference "reflects and preserves the proper relationship between trial courts and courts of appeal"). A federal district court must show even greater deference to a military

panel's factual determinations, not only because the panel was closer to the evidence, but also because federal courts generally owe deference to the military justice system. Schlesinger, 420 U.S. at 753. Here, Congress designed the military justice system to be largely self-contained, and within that system, panels serve a jury-like function enhanced by the fact that they are composed of the accused's active-duty military peers. Pet., ECF No. 2, ¶ 6 n.2; RCM 502(a)(1) (requiring that "[e]ach member [of the panel] shall be on active duty with the armed forces and shall be" of appropriate rank relative to the defendant). Furthermore, the design of the military justice system is such that factual determinations by a panel are not lightly second-guessed by appellate military courts, let alone by a federal district court. See, e.g., Art. 66, UCMJ, 10 U.S.C. § 866(d)(1)(B) (requiring the Courts of Criminal Appeals to accord "appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence"). These features of the military justice system and the general deference principles already recounted confirm that collateral review of Count Two would be inappropriate.[7]

Count Three, which alleges that the military court erred by failing to admit certain evidence under MRE 412, similarly fails to raise a fundamental defect. As to the nature of the

---

[7] Moreover, even if the Dodson test for custodial cases rather than the fundamental defect test for noncustodial cases were applied, Count Two must be dismissed. Under the fourth Dodson factor, Count Two received full and fair consideration in the military courts for reasons explained in more detail below concerning Count One. Csady fully briefed the sufficiency of the evidence issue before The Judge Advocate General, and The Judge Advocate General determined that the "government produced sufficient evidence on the maltreatment and indecent exposure offenses for a reasonable fact-finder to find the Applicant guilty of those offenses, rendering the findings legally sufficient." Mem. Supp. Mot. Dismiss Ex. 1, Opinion of The Judge Advocate General, ECF No. 38 at 2-4. Csady again fully briefed the issue in his application to the Air Force Court of Criminal Appeals. Mem. Supp. Mot. Dismiss Ex. 8, ECF No. 38 at 16-24. And the Air Force Court of Criminal Appeals determined that Csady's application had not demonstrated prejudicial error. Pet. App. V, ECF No. 2-5. As for the other Dodson factors, no error of "substantial constitutional dimension" is involved in a claim that evidence was factually and legally insufficient, and because Csady's claim revolves around whether R.B.'s testimony was credible, this claim amounts to an issue of "disputed fact already determined by the military tribunals." 917 F.2d at 1252.

alleged defect, like factual disputes, disputes about the application of evidentiary rules do not implicate whether the military court acted "within the scope of its jurisdiction and duty." Schlesinger, 420 U.S. at 746. Csady does not allege, for example, that the military judge had no power to make evidentiary decisions in his case, only that the military judge misapplied MRE 412. In fact, Csady acknowledges the limited scope of his disagreement with the military judge, explaining, "While the military judge adopted the facts proffered in the defense motion and cited the correct legal principles governing the issue, his application of the correct legal principles to the facts was clearly unreasonable." Pet., ECF No. 2, ¶ 115. A mere disagreement with the military judge's analysis cannot evince a fundamental defect.

Additionally, Schlesinger invites consideration of "the gravity of the harm from which relief is sought." 420 U.S. at 753. And here, the military judge's decision on one evidentiary matter likely was not outcome determinative, particularly where the judge did rule in Csady's favor on eight other evidentiary matters, many of which concerned Csady's mistake of fact defense. Suppl. Pet., ECF No. 33, ¶ 42. Thus, collateral review of Count Three is barred under Schlesinger because Csady's disagreement with this single evidentiary ruling does not render the judgment against him void.[8]

Although Count One comes closer than the purely factual and evidentiary challenges of Counts Two and Three to raising a fundamental defect, the military courts gave full and

---

[8] Applying the Dodson factors confirms that Count Three must be dismissed. Per the fourth and most significant Dodson factor, Count Three received full and fair consideration for much the same reasons discussed below concerning Count One. The Judge Advocate General opinion devoted multiple pages to analyzing the MRE 412 issue. Mem. Supp. Mot. Dismiss Ex. 1, Opinion of The Judge Advocate General, ECF No. 38 at 5-7. Csady fully briefed the issue before the Air Force Court of Criminal Appeals. Mem. Supp. Mot. Dismiss Ex. 8, ECF No. 38 at 29-33. And the Air Force Court of Criminal Appeals determined that Csady's application had not demonstrated prejudicial error. Pet. App. V, ECF No. 2-5.

fair consideration to Csady's claim that his maltreatment conviction was void for vagueness under the Fifth Amendment's Due Process Clause. The most important <u>Dodson</u> factor is the fourth factor, which evaluates whether the petitioner has shown that the military courts' consideration of a claim was inadequate. <u>Santucci</u>, 66 F.4th at 858. "Where an issue is briefed and argued before the military court and is disposed of, even summarily, the federal habeas court will find that the issue has been given full and fair consideration." <u>Miller v. Air Force Clemency & Parole Bd.</u>, No. 10-2621, 2011 WL 4402497, at *9 (D. Md. Sept. 20, 2011). Additionally, "[i]f a petitioner failed to present a claim to the military courts, it is waived," unless a petitioner can show cause and actual prejudice. <u>Id.</u> (citing <u>Roberts v. Callahan</u>, 321 F.3d 994, 995 (10th Cir. 2003)).

Here, Csady did not raise the void for vagueness issue when he initially sought review of his conviction before The Judge Advocate General. Pet., ECF No. 2, ¶ 17. Without showing cause or actual prejudice, therefore, this suffices to demonstrate that Csady waived his vagueness challenge. <u>Miller</u>, 2011 WL at *9. Csady did, however, raise the issue to the Air Force Court of Criminal Appeals in his Application for Grant of Review, in which Csady devoted approximately eight pages to briefing the vagueness arguments presented in the instant case. <u>Id.</u> ¶ 20; Mem. Supp. Mot. Dismiss Ex. 8, ECF No. 38 at 8-16. The Air Force Court of Criminal Appeals wrote, "We have reviewed the action taken by The Judge Advocate General in this case and the Application for Grant of Review timely submitted to this court . . . . The court determines the application has not demonstrated a substantial basis for concluding that the action under review constituted prejudicial error." Pet. App. V, ECF No.

2-5.[9] Having so concluded, the Air Force Court of Criminal Appeals was obligated to deny Csady's Application for Grant of Review. Art. 69(d), UCMJ, 10 U.S.C. § 869(d) (permitting grant of an application for review of The Judge Advocate General's determination "only if" the application demonstrates prejudicial error).

Such a succinct denial of an Application for Grant of Review constitutes full and fair consideration under the Tenth Circuit standard and beyond. See Roberts, 321 F.3d at 997 ("[W]here an issue is adequately briefed and argued before the military courts the issue has been given fair consideration, even if the military court disposes of the issue summarily."); Thomas v. U.S. Disciplinary Barracks, 625 F.3d 667, 671 (10th Cir. 2010) (holding that full and fair consideration does not require oral argument or that the military court's order "spell out the reasoning for its dismissal"); Brown, 2023 WL 2648781, at *1 (noting "the Tenth Circuit's recent and repeated affirmations that full and fair consideration is given when a claim is adequately and thoroughly briefed, even if the military courts summarily disposed of the claim"); Armann v. McKean, 549 F.3d 279, 284 (3d Cir. 2008) (concluding that a military court gave full and fair consideration to the petitioner's claims without holding oral argument and where the military court simply affirmed the lower court's decision in one sentence that did not explicitly mention the claim at issue). Notably, the Tenth Circuit has held that where an issue has been briefed before a military tribunal, the issue has received full and fair consideration, even where the military tribunal's "opinion summarily disposed of the issue with the mere statement that it did not consider the issue meritorious or requiring discussion."

---

[9] Because the Air Force Court of Criminal Appeals specifically noted that it considered the Application for Grant of Review, it is particularly clear that that court considered the vagueness challenge briefed in Csady's application, even though Csady himself failed to raise the issue to The Judge Advocate General.

Watson v. McCotter, 782 F.2d 143, 145 (10th Cir. 1986). The Air Force Court of Criminal Appeals' decision in this case was just such a "statement that it did not consider" Csady's claims, including the void for vagueness challenge, "meritorious or requiring discussion." Id.

Full and fair consideration requires review at only one level of the military justice system, so the fact that Csady briefed the vagueness issue before the Air Force Court of Criminal Appeals suffices to show that his claim received full and fair consideration. Chinchilla, 2021 WL at *4 ("Though only one appellate court had an opportunity to consider this claim, review at one level may be sufficient to constitute full and fair consideration."). Nevertheless, Csady again raised the vagueness issue before the Court of Appeals for the Armed Forces. Pet., ECF No. 2, ¶ 28. That court dismissed Csady's Petition for Grant of Review for lack of jurisdiction. Id. at ¶ 30. Although the opinion did not state its reasoning, the Court of Appeals for the Armed Forces lacks jurisdiction over cases not "reviewed" by a Court of Criminal Appeals, and here, the Air Force Court of Criminal Appeals denied Csady's application for review. Art. 67, UCMJ, 10 U.S.C. § 867. Thus, Csady's claim received all consideration available to it within the statutorily defined scope of the jurisdiction of the military appellate courts.

Failing even a single Dodson factor renders collateral review unavailable. See Santucci, 66 F.4th at 856 (explaining that "petitioners must establish—in substance—that each of the four Dodson factors weighs in their favor to be eligible for full merits review of their claims"). Applying just the fourth and most weighty Dodson factor, it is clear that Count One cannot survive the full and fair consideration test for collateral review of custodial cases, let alone the more deferential fundamental defect test for noncustodial cases, and therefore does not raise

an issue that could render Csady's court-martial conviction for maltreatment void. This court's review is therefore unavailable.

## CONCLUSION

Because none of Csady's claims raises a jurisdictional or otherwise fundamental defect that could render his convictions void, the motion to dismiss is **GRANTED**.

An appropriate order will be entered.

Entered: *March 20, 2025*

Michael F. Urbanski
Senior United States District Judge